GREAT ATLANTIC AND PACIFIC TEA COMPANY, Appellant-Appellee,

v.

O. C. JONES, Appellee-Appellant.

O. C. JONES, Appellee-Appellant,

v.

GREAT ATLANTIC AND PACIFIC TEA COMPANY, Appellant-Appellee.

No. 18373.

United States Court of Appeals
Fifth Circuit.

Sept. 15, 1961.

496

Harry T. Gray, Francis P. Conroy, Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for appellant.

William D. Barfield, Jacksonville, Fla., for appellee.

Before RIVES and WISDOM, Circuit Judges, and WRIGHT, District Judge.

WISDOM, Circuit Judge.

The plaintiff, O. C. Jones, sued the Great Atlantic and Pacific Tea Company, his employer, for damages for injuries received in the course of the plaintiff's employment. Jones was injured while unloading a refrigerator in an A & P warehouse, allegedly because of the negligence of the employer, its servants, agents, and employees. The case was tried before a jury. At the close of the evidence, the A & P moved for a directed verdict on the ground that no actionable negligence had been shown. The trial court denied this motion. The jury returned a verdict for Jones in the amount of $6,500. The A & P then moved to set aside the verdict and to enter judgment in its favor, or, alternatively, to grant a new trial. This motion was denied. Jones moved for a new trial on the issue of damages only. This motion too was denied. Both parties appeal. We affirm.

## I.

Jones began working for the A & P in October 1955. Late in December 1956 he and four other employees were unloading several large refrigerators from a truck at A & P's warehouse in Jacksonville, Florida. The refrigerators were each twelve to fourteen feet long. The truck containing the refrigerators backed up to the loading platform, so that the floor of the truck was a foot or more above the platform. As a usual procedure, the workers would place rollers under a refrigerator in the truck and would roll the refrigerator off the truck body down skid boards to the loading platform. They used a pry dolly to raise the refrigerator high enough to place the rollers underneath, and a block to support the skid boards. Ordinarily, when a refrigerator would reach a certain point in roll-

ing off the truck body onto the skid boards to the platform, it would tilt forward, a worker would catch it on the pry dolly, then swing it to one side to prevent it from running off the platform. At the time of the accident, Jones was on the platform side of the refrigerator, and other members of the crew were at the sides and rear of the refrigerator. While Jones was operating the pry dolly, and after the workers had removed the first refrigerator, the second refrigerator started rolling down the skid boards. Suddenly, the roller came out from under it. Using the pry dolly, Jones succeeded in prying the refrigerator back into position and getting the roller under the refrigerator. It was then necessary to push the refrigerator and start it rolling down the skid boards again. After starting it in motion once more, Jones "had to snatch at it to get it from running off on the side." Jones testified that at the time he felt a cramp in his back, and for two or three days after the incident his back "felt a little funny." But—he continued to work.

The second or third day after the refrigerator incident, Jones felt a different kind of pain in his back when, in the process of stacking flour bags, he lifted a ten-pound bag of flour. He reported his injury to the warehouse supervisor, who asked if he wanted to see a doctor. Jones said "no," and stayed on the job until quitting time, not long after. During the night the pain became worse and by the next morning Jones could barely move. He went to work late. The A & P sent him to a doctor. Jones visited the doctor three or four times over a five-day period, returned to work, and was assigned to the cooper shop. The work in the cooper shop was lighter, but while bending over to pick up some paper Jones's back pain returned with such severity that he wept from the pain. He went home, rested for three days, then returned to work. For some reason of his own, Jones decided that the doctor's treatment was not aiding him, and he treated himself with different home remedies: liniments, oils, and various pills.

It should be noted that Jones did not report any injury in connection with moving the refrigerator until three or four weeks after the incident occurred, long after he had felt the recurrence of pain while stacking the bags of flour. He continued to work for the A & P from the time of the refrigerator injury until the date of the trial, and received all of his pay except for a temporary reduction while he was hospitalized for removal of a varicose vein. Jones, by his own testimony, had helped unload refrigerators two or three times a week previous to the incident in question, and he testified that the usual procedure was followed when the incident occurred.

The complaint alleges that Jones "was injured through the negligence of the defendant, its servants, agents and employees, by their negligence in the handling of a * * * refrigerator whereby said refrigerator was permitted to slide while plaintiff was engaged in helping unload said refrigerator causing the entire weight of the refrigerator to be supported by the plaintiff thereby injuring the plaintiff severely." Jones made no specific allegation that his employer failed to furnish a reasonably safe place to work or reasonably safe tools with which to do the assigned work, nor did he allege that the method of work placed him in a position where he was likely to be injured. In its answer, A & P denied that "negligence" in the handling of the refrigerator resulted in Jones's injury. Since the A & P had formally rejected the Florida Workmen's Compensation Law, Chapter 440, F.S.A., and never withdrawn this rejection, defenses of contributory negligence, the fellow servant doctrine, or assumption of risk were not available to the defendant.

## II.

In Florida, as in all states, an employer owes certain duties to his employees. He must furnish them a reasonably safe place in which to work. Peninsular Tel. Co. v. Dority, 1937, 128 Fla. 106, 174 So. 446. He must furnish them reasonably safe tools with which to do the work assigned. Moody v. Hanlon, 1938, 131 Fla. 129, 179 So. 164. And he must furnish suitable and competent fellow servants to work with them. McGee v. C. Ed. DeBrauwere & Co., 1935, 117 Fla. 859, 162 So. 510. The duty to provide reasonably safe instrumentalities and places to work is a common law doctrine, based upon the rule of respondeat superior. See Holstun & Son v. Embry, 1936, 124 Fla. 554, 169 So. 400; and Bartholf v. Baker, Fla., 71 So.2d 480.

Jones made no allegations in his complaint specifically stating which, if any, of the employer's duties the A & P breached. A & P argues that Jones's sole complaint was that some undefined negligence in the handling of the refrigerator resulted in his injury. Jones takes the position that it is not necessary to specify particular breaches of duties. We agree with Jones. The federal rules permit pleading a general allegation of negligence and, for brevity, simplicity, and avoidance of specifics, Official Form No. 9, approved by the Supreme Court, puts Jones's complaint to shame. Rule 84, F.R.Civ.P., 28 U.S.C.A., provides that these Forms "are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." See 7 Moore, Federal Practice, ¶ 84.01, ¶ 84.02. The A & P does not dispute that, as an employer, it owes the basic duties of furnishing reasonably safe instrumentalities and a safe place to work. We cannot see how the A & P was in any way taken by surprise or affected to its detriment by Jones's failure to allege with more particularity the duties A & P breached. And, in any case, A & P could easily have moved for a more definite statement, had it so desired. Rule 12(e), F.R.Civ.P. See 2 Moore, Federal Practice, ¶ 12.18. We consider the charge of negligence in Jones's complaint as comprehending the A & P's failure to meet the duties of an employer to an employee under Florida law. The sufficiency of the evidence to support the verdict turns on all the evidence, not the lack of particularity in the complaint.

The question is whether sufficient evidence shows a breach of any employer's duties to Jones. A & P maintains the evidence shows that it fulfilled all duties owed to Jones and that there is no evidence to the contrary.

■ The evidence shows that Jones's task had been safely and successfully performed in the past at the very same place, with the same tools, in the same manner, and with the same crew. In the eyes of the A & P, this evidence establishes fulfillment of its duty to exercise ordinary care. Indeed, under cross-examination, Jones himself admitted that his fellow employees "didn't do anything wrong". The defendant relies heavily on this testimony. But counsel for A & P qualified the question of doing "anything wrong"; he stated, "I mean, they didn't push the ice box on you or drop it or anything like that, did they?" Jones's answer of "no" to such a question, clarified as it was, in no way precludes a finding of negligence on the part of the fellow employees. Jones testified that the roller would not have come down on the skid boards if the workers "had followed the proper procedure." He testified that if the workers had put the rollers under the box properly, the box would not have tilted at all. He had no knowledge of the particular deviation from the normal procedure that caused this tilt, but he explained the usual procedure and he knew that there had been some deviation from it. In the circumstances, this is all that Jones could reasonably be expected to know. Whether the testimony is convincing is a fact for the jury to determine.

■ A fellow employee, J. D. Stokes, who had also worked unloading refrigerators, and who worked closely with Jones, testified that ".if you followed the right procedure—I mean, the roller or nothing would slip; naturally it would come out normally, if everybody would hold it in position right." Both men testified of the danger that the refrigerator might fall on other employees or shove an employee off the dock or run off onto the railroad tracks, if it were not turned

properly. They testified also of the danger if the skid board should come off the block. Another fellow employee, Mack Taylor, who worked unloading refrigerators, testified that if proper equipment were used, the roller would not slip out or get hung up on the skid board. There was testimony of similar incidents, known to the supervisory employees of the A & P in which refrigerators "hung up" on skid boards. Summarizing, the evidence in the record favorable to the plaintiff shows a breach of duty by defendant in several respects: improper equipment, an unsafe platform, prior similar incidents, danger in the work-method used, and abnormal procedure followed at the time of the incident including improper handling by Jones's fellow employees. On the record, as we read it, there was sufficient evidence for the jury rationally to conclude that the roller would not have come out and the incident would not have occurred, except for negligence on the part of some of Jones's fellow employees. We do not say that as a matter of law A & P was negligent; we hold that there was competent, substantial evidence of negligence to support the judge's decision to submit the case to the jury, and there was a rational basis for the jury's decision.

### III.

■ Jones appeals on the grounds that the amount of damages awarded him is so inadequate as to shock the conscience of the court. The jury, he says, misconceived the evidence, failed to consider essential evidence of the damage involved, failed to consider the issues submitted, misused the law as charged, and otherwise failed to discharge its duty as directed by the court.

Under Rule 59(a), F.R.Civ.P., the trial court may set aside a verdict and grant a new trial on the ground that the damages awarded are inadequate. See 6 Moore, Federal Practice, ¶ 59.08 [6], especially cases cited note 2. In its discretion the court may grant a new trial on the issue of damages only. Id., note 4, and see Southern Pine Extracts Co. v.

Bailey, Fla. 1954, 75 So.2d 774; Brinson v. Howard, Fla.1954, 71 So.2d 172.

The jury awarded Jones $6,500: $4,991 in special damages, and $1,309 for pain, suffering and disability. There is testimony that Jones had a bad back before the accident. There is medical testimony that the injury sustained because of the refrigerator incident was very slight. Except for a short period, unrelated to this lawsuit, Jones was able to work in his old job from the day of the accident to the day of the trial. In spite of the evidence as to the length and severity of Jones's pain and suffering, we cannot say the trial court abused its discretion in failing to grant a new trial.

## IV.

█ Finally, Jones contends that the trial judge's charge to the jury, on the jury's request for instructions as to the second "accident", was erroneous.

After taking the case under advisement, the jurors returned and asked whether they "should consider both accidents in this case, the refrigerator incident and the flour stacking incident." The trial judge answered that there was "no claim here based on what we can call the flour stacking incident". The trial judge made a lengthy explanation of the duty of an employer, concluding: "But, to answer your question specifically, that is when he claims he was injured either by reason of the failure of the A & P to furnish him a safe place to work or to furnish him with reasonably safe tools with which to work or through the negligence, or lack of due and reasonable care, on the part of his fellow employees. Either one of those—the failure to perform their duty towards him in one or more of those particulars." The foreman of the jury said, "that covers the question". After the jury retired the following colloquy occurred between the trial judge and Jones's counsel:

"Mr. Barfield: Your Honor, I think that the one thing that might have been confusing to the Jury is as to whether they would consider both incidents. It is perfectly proper that they could not consider the second incident. Of course, if the original incident set up a chain in action, they can consider the effect of the second—not as a matter of negligence, but as a weakened condition in his back that resulted from this accident.

"I should think that possibly there might be some confusion in their minds on that point.

"The Court: Well, let's get down to specifics: Do I take it that you are putting an objection in the record?

"Mr. Barfield: Yes. I am putting an objection in at that point.

"The Court: All right. I think, in the form in which the question is put, I had to answer it in the way I did. Maybe I should have elaborated in the way you suggest but I don't consider that it was required by the way they put the question and I am not inclined to bring them back and give them that additional instruction."

The jury's reference to two "accidents" indicates, to this Court as it did to the trial court, that the jury was in doubt whether it should consider the two incidents separately *in determining negligence.* This is borne out by the jury's satisfaction with the court's explanation of the employer's duties to employees. Even Jones's counsel recognized that it was "perfectly proper that they [the jurors] could not consider the second incident" as a "claim". It would have been entirely consistent with this understanding for the jury to have considered the second incident as brought on by the first incident as a link in a chain reaction or as evidence that Jones did in fact have a back injury severe enough to cause pain when he lifted as little as ten pounds. In short, the instructions do not preclude the jury considering the second incident for what it may be worth. We are not so clairvoyant as to say that the jury was too confused to consider the flour stacking incident for its probative

value. We hold that the district court properly refused to recall the jury for additional instructions.

We have considered all of the arguments raised by the parties on appeal and cross-appeal, whether or not discussed in this opinion. The judgment of the district court is hereby

Affirmed.