380 So.2d 1313 (1980)
Morton FRIEDMAN, Appellant,
v.
MUTUAL BROADCASTING SYSTEM, INC., and Larry King and Wiod, Appellees.
No. 79-1217.
District Court of Appeal of Florida, Third District.
March 18, 1980.
Alan Goldfarb and Joel Lumer, Miami, for appellant.
Steel, Hector & Davis and Dean C. Colson, Smathers & Thompson and Earl D. Waldin, Jr., Miami, for appellees.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
BARKDULL, Judge.
The appellant brought a five-count complaint against WIOD and Mutual Broadcasting Co., and an individual known as Larry King, as an outgrowth of a transaction in which the plaintiff had advanced money to King ostensibly for King to promote a cartoon product created by the plaintiff.
At the time the plaintiff and defendant, King, entered into their initial arrangements, King was employed by WIOD as the host of a talk show. Subsequently, he became employed by Mutual in a similar capacity. In the first count, plaintiff sought recovery against WIOD and Mutual for fraud and deceit, allegedly on the theory of *1314 respondeat superior. Counts two and three are not applicable to this appeal.[1] In count four, the plaintiff sought recovery for alleged emotional distress, and in count five proceeded on a theory of negligent hiring. We affirm.
As to the first count, there were not acts alleged which demonstrated that the conduct of King, in agreeing with Friedman to promote his cartoon character for monies to King, was in furtherance of the employer's business or was within the responsibility of the duties King was to exercise for the employer. In this connection, see: Reece v. Ebersbach, 152 Fla. 763, 9 So.2d 805 (1942); City of Miami v. Simpson, 172 So.2d 435 (Fla. 1965); Nettles v. Thornton, 198 So.2d 44 (Fla.1st DCA 1967); Jones v. City of Hialeah, 368 So.2d 398 (Fla.3d DCA 1979). The Supreme Court, in considering the issue of liability of the master for the acts of the servant, stated as follows in City of Miami v. Simpson, supra:
.....
"... The liability of a master can arise in such instances only when the act of the servant is done within the real or apparent scope of the master's business. The master's liability does not arise when the servant steps aside from his employment to commit the tort or does the wrongful act to accomplish some purpose of his own. If the tort is activated by a purpose to serve the master or principal, then he is liable. Otherwise he is not... ."
.....
There was no cause of action for emotional distress, because there was in fact no impact or independent tort or willful and wanton conduct on the part of King that would have made his employer liable. In this connection, see: Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950); Slocum v. Food Fair Stores of Florida, Inc., 100 So.2d 396 (Fla. 1958); Brooks v. South Broward Hospital District, 325 So.2d 479 (Fla.4th DCA 1975); Steiner and Munach v. Williams, 334 So.2d 39 (Fla.3d DCA 1976); Gellert v. Eastern Air Lines, Inc., 370 So.2d 802 (Fla.3d DCA 1979). In Gellert v. Eastern Air Lines, Inc., supra, this court, in considering the question of a claim for damages based on emotional distress, held:
.....
"Under the decisions dealing with recovery for intentional infliction of severe mental distress, recovery therefor is proper only when the causatory conduct is deliberately done with intent to so harm the person, and is of such wanton and outrageous character as would constitute conduct that would warrant the allowance of punitive damages (Kirksey v. Jernigan, supra), and constitutes conduct that exceeds all bounds which could be tolerated by society; and is of a nature especially calculated to cause mental damage of a serious kind."
.....
As to the negligent hiring, there were no facts pled which would have put WIOD or Mutual on notice of the propensities of King to defraud the plaintiff and, further, the acts of King were not done in furtherance of the employer's business nor within the scope of his responsibilities.
Therefore, the final order[2] of the trial judge, dismissing the second amended complaint, be and the same is hereby affirmed.
Affirmed.
SCHWARTZ, Judge (dissenting).
The exact and only activity the corporate appellees hired King to perform as a radio talk show host was, simply enough, to talk, to make such statements as he desired over the air in order to fill the allotted time. Since this is the case, I believe that the *1315 defendants may be held vicariously responsible for King's oral misrepresentations during the course of that work, even if, as the complaint indeed demonstrates, they were made to serve only his own personal purposes. The applicable principle, as to which the tort of fraud differs from those involved in the cases cited in the majority opinion, was recognized and applied by the supreme court in Industrial Ins. Co. of New Jersey v. First National Bank of Miami, 57 So.2d 23, 26 (Fla. 1952):
We decided long ago, in Aetna Ins. Co. v. Holmes, 59 Fla. 116, 52 So. 801, 802, that "`The acts of an agent, performed within the scope of his real or apparent authority, are binding upon his principal'" and further that "`The public have a right to rely upon an agent's apparent authority, and are not bound to inquire as to his special power, unless the circumstances are such as to put them upon inquiry.'" The court was quoting charges which it approved.
In the Restatement of the Law of Agency, we find, Sec. 261, that "`A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.'" In the following section of the same work [Sec. 262] appears the statement that "`A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him, under the rule stated in Sec. 261, is not relieved from liability by the fact that the apparent agent acts entirely for his own purposes, unless the other has notice of this.'" [emphasis supplied]
Accord, Phillips Petroleum Co. v. Royster, 256 So.2d 559 (Fla.1st DCA 1972). That this rule is directly applicable to the media situation involved in this case is demonstrated by Restatement (Second) of Agency § 247 (1957), which similarly states that
A master is subject to liability for defamatory statements made by a servant acting within the scope of his employment, or, as to those hearing or reading the statement, within his apparent authority. [emphasis supplied]
Comment c to this section is directly on point here:
[O]ne who appears to have authority to make statements for the employer gives to his statements the weight of the employer's reputation. For this reason, the liability of the master may be based upon apparent authority. The motive of the spokesman and the position he holds are therefore immaterial if the master has apparently designated him to speak. In this respect there is a close analogy between defamation, deceit and the principal's liability upon contracts, in all of which liability may be based upon apparent authority and in none of which is the intent to serve the master or other principal determinative. See § 262. [emphasis supplied]
I also disagree with the court's conclusion that the complaint is insufficient on the alternative, "negligent hiring" theory. In my view, the allegations as to King's past derelictions adequately state such a claim under the principles stated in McArthur Jersey Farm Dairy, Inc. v. Burke, 240 So.2d 198 (Fla.4th DCA 1970).
For these reasons, I would reverse the judgment below.
NOTES
[1] Count II remains pending against King individually. Count III was an action for defamation, which was voluntarily dismissed by plaintiff.
[2] We have entertained this appeal because, even though it is a partial dismissal rather than a dismissal in its entirety, the counts dismissed are independent, several and distinct. See: Mendez v. West Flagler Family Association, Inc., 303 So.2d 1 (Fla. 1974).