Peter Z. **KAMENESH**, Plaintiff,

v.

The **CITY OF MIAMI**, a municipal corporation; Clarence Dickson, individually and as Chief of Police of the City of Miami; Alfredo Bared, individually and as Assistant Chief of Police of the City of Miami; Perry Anderson, individually and as Assistant Chief of Police of the City of Miami; Col. (Retired) Paul Oboz, individually and as Commander of SIS Division of the City of Miami Police Department; and Major E.B. Putnam, individually and as Commander of the Information Management Section of the City of Miami Police Department, Defendants.

No. 87–0509–Civ.

United States District Court,
S.D. Florida.

July 15, 1991.

Steel Hector & Davis by Elizabeth J. DuFresne, Nathan & Williams, P.A. by Douglas L. Williams, Lionel Barnet, Miami, Fla., for plaintiff.

Lucia A. Dougherty, City Atty., Charles C. Mays, Asst. City Atty., Miami, Fla., for defendants.

## MEMORANDUM AND ORDER

HOEVELER, District Judge.

THIS CAUSE IS before the court upon Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff Peter Kamenesh is a twenty year veteran of the City of Miami's Police Department. He began his tenure as a rank and file police officer, subsequently earning promotions to sergeant and lieutenant. By August 1984, Kamenesh was the top candidate for promotion to captain out of twenty-four eligible officers. In March 1985, Plaintiff was appointed to the position of captain, the rank he presently holds. The position of captain is the highest competitive rank available under the City's civil service system. Positions above the rank

of captain, with the exception of the chief of police, are executive staff positions whose appointees serve at the pleasure of the police chief with the approval of the City Manager.

When viewed in a light most favorable to Plaintiff for purposes of Defendants' motion, the facts bear out the following. Shortly after being promoted to captain, Kamenesh was transferred to the Special Investigative Section ("SIS") by Defendant Clarence Dickson, the then newly-appointed chief of police. It was the express understanding between Kamenesh and Dickson that Plaintiff would serve as deputy commander of SIS for a short period and would then be promoted to commander. Apparently Dickson was concerned about the integrity of SIS. The division was largely unaccountable to the chief of police, having grown nearly autonomous from the rest of the Department under its long-entrenched commander, Defendant Colonel Paul Oboz.

Oboz immediately suspected the chief's plan to oust him. He complained from the start about Kamenesh's appointment to SIS. Within a month, Oboz sent a memorandum to Chief Dickson alleging that Kamenesh had lied to him about his whereabouts during work hours and accusing Kamenesh of insubordination and neglect of his duties. In the May 28, 1985 memorandum Oboz also made reference to a five-year old internal department memorandum which alleged that Kamenesh had associated with a known felon, former police officer Frank Anatasia. Meetings with the police chief and more accusatory memoranda followed. With his hand forced prematurely, Dickson sought to replace Oboz with Kamenesh. The move was vetoed by the City Manager. Apparently realizing his ploy had failed and fearful of its overt exposure, Dickson accepted Oboz's recommendations to transfer Kamenesh out of SIS and to instigate an Internal Security investigation into Kamenesh's associations with Anatasia and his alleged insubordination to Oboz. On June 3, 1985, Kamenesh was transferred to the Information Management Section ("IMS") under the direct command of Defendant Major Emory Putnam. Putnam, in turn, was under the command of Defendant Assistant Chief of Police Alfredo Bared.

The Internal Security investigation conducted over the next several weeks cleared Kamenesh of the charges of associating with a convicted felon but found him untruthful and insubordinate to Oboz and neglectful of his duties. Based on these findings, Plaintiff's new supervisor, Defendant Putnam, recommended Plaintiff be demoted and discharged. His superior, Defendant Bared, concurred. Police Chief Dickson elected instead to impose a six month extension of Kamenesh's probationary period as captain and to eliminate forty hours of Plaintiff's earned overtime.

During this period Kamenesh received several adverse performance evaluations from Defendants Oboz and Putnam. In addition, news of the charges against Kamenesh was improperly leaked to the press before the investigation was complete.

Kamenesh appealed Dickson's disciplinary measures to the City's civil service board. In November of 1985, the board unanimously directed a verdict in favor of Kamenesh after hearing the Department's case. All disciplinary measures against Plaintiff were revoked by the board's ruling.

Beginning with Kamenesh's new assignment in IMS and continuing with all subsequent assignments—many of which have been imposed by former Assistant Chief of Police, Defendant Perry Anderson [1]—Plaintiff has been given nothing but insubstantial responsibilities, largely clerical in nature. Rather than commanding an organic unit as befitting the rank of captain, Kamenesh's assignments require him to work alone on lightly regarded tasks, with no secretary or subordinate to assist him, and with no bona fide operational function to oversee.

---

**1.** Defendant Anderson was subsequently promoted and has served as chief of police for much of the pendency of this lawsuit.

## DISCUSSION

### Count I: The § 1983 Claims

Under Count I of his complaint, Plaintiff seeks damages and equitable relief under 42 U.S.C. § 1983 for several different alleged constitutional violations committed by the Defendants. Because Plaintiff's various § 1983 claims concern different constitutional transgressions, rely on separate variations of the facts, and are subject to differing standards of proof,[2] each should have been pled as a separate count. The court will separate and address those claims accordingly.

### A. Due Process Deprivation of Property

#### 1. *Constructive Demotion*

■ Kamenesh asserts that he has been deprived of a constitutionally protected property interest by the conduct of Defendants. His property claim focuses on an alleged arbitrary "constructive demotion" to lesser duties unbefitting an officer of his rank without notice or opportunity to be heard. Embedded in this allegation lie both substantive and procedural due process claims. To the extent Plaintiff claims his interest in continued employment without demotion except for cause has been deprived "for an improper motive and by means that are pretextual, arbitrary and capricious," he has alleged a substantive due process violation. *Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571, 1577 (11th Cir.1983) (citation omitted). To the extent he alleges the demotion occurred without reasons being offered or the opportunity to be heard, he advances a procedural due process claim.

Neither claim could be established, of course, were Kamenesh unable to demonstrate first that he has a property interest in continued employment, subject to demotion only for cause. Defendants attack Plaintiff's claim of a property interest on two fronts. First, Defendants argue that Kamenesh's new duties are the results of mere transfers and that "transfers and reassignments have generally not been held to implicate a property interest." *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir.1988). Defendants rely on Florida Statutes § 447.209 and the parties' Collective Bargaining Agreement to demonstrate that City management has the unilateral authority, indeed the mandate, to transfer and assign employees as the City sees fit.

■ Defendants'· argument admits the crucial factual question precluding summary judgment on Plaintiff's deprivation of property claim: whether Kamenesh's new assignments were only lateral transfers or whether they were so incomparable to his past duties and the duties befitting a Miami Police captain as to constitute a constructive demotion. A public employee can have a property interest in not being demoted without cause—as opposed to not being transferred without cause—where such an interest arises from established "rules" or the parties' "mutually explicit understandings." *Winkler v. County of DeKalb*, 648 F.2d 411, 412 (5th Cir.1981) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d

---

**2.** The different nature of the underlying constitutional right at issue determines the appropriate standard required to obtain relief under § 1983. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In the Eleventh Circuit, for example, a Due Process violation can be established upon plaintiff showing merely that defendant "knew or should have known" that he or she arbitrarily deprived plaintiff of life, liberty, or property. *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988). *Cf. Daniels v. Williams*, 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3 (declining to decide whether "something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process Clause" for relief under § 1983). To establish a violation of the Equal Protection Clause, however, the law requires proof of defendant's "discriminatory intent or purpose." *Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Proof of deprivation of a public employee's First Amendment rights disregards entirely questions of the employer's intent to do harm, relying instead on an "effect" test, that is, whether the disadvantageous treatment incurred was caused primarily by the employee's protected expression. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Givhan v. Western Line Consolid. School Dist.*, 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

570 (1972)).[3] In *DeKalb*, the former Fifth Circuit held that a county engineer had a property interest in not being demoted to "a position of vastly diminished responsibilities" without cause. *Id.* Similarly, in *Hatcher v. Bd. of Public Educ. and Orphanage*, the Eleventh Circuit found that a public school teacher had a property interest in not being "transferred" without cause to a lesser position. 809 F.2d 1546, 1551–52 (11th Cir.1987).

Defendants argue that even if Kamenesh were demoted, no rules or mutual understandings exist sufficient to establish for Plaintiff "a legitimate claim of entitlement" to continued employment devoid of discretionary demotion. *See Perry*, 408 U.S. at 602, 92 S.Ct. at 2700. For purposes of Defendants' motion, the court cannot agree. Section 447.209 of Florida Statutes, on which Defendants rely as the source of their unfettered authority, limits a public employer's disciplinary and disadvantageous actions against employees to those taken "for proper cause" and "legitimate reasons."[4] Similarly, the Collective Bargaining Agreement between the City of Miami and the police union allows the Department "to suspend, demote, discharge, or take other disciplinary action against employees" only where "proper cause" is present. Collective Bargaining Agreement at 3.[5] *See Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978) ("City employment which allows a termination only for cause creates a constitutionally protectable property interest.").

Moreover, Florida Statutes § 112.532(4), a provision of the "Police Officer's Bill of Rights," requires that law enforcement officers be given prior notice of any demotion to which they shall be subjected along with the "reasons therefor." Requiring that an employer or other authority provide reasons for its actions has traditionally served as a means of preventing the arbitrary exercise of power and adds credence here to Plaintiff's contention that he could not be demoted absent proper cause.[6]

 Plaintiff cites two other bases for his property interest, neither of which the court finds persuasive. Kamenesh asserts that the existence of a performance evaluation manual instructing superiors on how to rate their subordinates supports his claim of entitlement. Yet, practically all employers have evaluation systems—even at-will employers. Assuming *arguendo* that Kamenesh could somehow establish a contractual right to accurate and truthful performance evaluations, no more light would be shed on the ultimate question of whether he possesses a property right to employment devoid of discretionary demotion. Though an employee's performance ratings may be *"a factor* in discipline, merit raises, etc.,"* Performance Rating Manual at 1 (emphasis added), the manual does not prohibit the employer from sanctioning or rewarding employees for other reasons—or for no reason. Though the Defendants' alleged violation of the standards in the manual could serve as proof of the arbitrariness of the deprivation of Plaintiff's liberty and property rights, the manual itself does not qualify as a mutually under-

---

**3.** Under the ruling in *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the decisions of the Fifth Circuit handed down prior to October 1, 1981 serve as binding precedent in the Eleventh Circuit.

**4.** In pertinent part, § 447.209 reads:
It is ... the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons.

**5.** Section 447.209 also incorporates existing collective bargaining agreements as valid limitations on the conduct of public employers:

.... [T]he exercise of [a public employer's] rights shall not preclude employees or their representatives from raising grievances, should decisions on the above matters have the practical consequence of violating the terms and conditions of any collective bargaining agreement in force or any civil or career service regulation.

**6.** Another possible source for rules or mutual understandings of entitlement may be the City's Civil Service Rules & Regulations which apply to employment of police officers through the rank of captain. Neither party has indicated to the court how these regulations affect Kamenesh's claim of entitlement, if at all.

stood limitation on the Department's ability to demote its employees.

█ Secondly, Kamenesh, who has remained with the Police Department despite his alleged diminished duties, asserts that his demotion amounts to a constructive discharge. By such means, Plaintiff hopes to establish that he has been deprived not only of the narrower right to suffer no demotion except for cause, but of his right to the employment itself. Though ever appreciative of novel approaches to the law, the court cannot sanction Plaintiff's theory of "constructive" constructive discharge for the simple reason that Plaintiff remains in his job, drawing the same salary and benefits otherwise due him.[7] Plaintiff correctly observes that a constructive discharge occurs when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Jett v. Dallas Independent School Dist.,* 798 F.2d 748, 755 (5th Cir.1986), *aff'd in part on other grounds and remanded,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071 (5th Cir.1981). From there, Plaintiff artfully, but erroneously, proceeds to argue that, because any reasonable person in his position would have resigned, he should be deemed to have suffered a constructive discharge and should not be penalized for his "continued stalwart performance" in suffering the Defendants' outrages.

Plaintiff's argument fails to recognize a primary element of constructive discharge: that "the employee [be] forced into an involuntary resignation." *Young v. Southwestern Savings & Loan Assoc.,* 509 F.2d 140, 144 (5th Cir.1975). All the cases Kamenesh cites in support of his proposition, including *Jett,* which held that "a demotion or transfer in some instances may constitute a constructive discharge," 798 F.2d at

755, involve plaintiffs who have resigned and assume resignation as a prerequisite to relief.

To hold otherwise would violate the longstanding tort notion that Defendants take the Plaintiff as they find him. Defendants may have been fortunate in visiting their transgressions on one so stalwart as Plaintiff rather than on a being of the more ordinary, thin-skulled variety. Nonetheless, the harm for which they are liable can only be that which actually flowed from their actions.[8]

Even absent Plaintiff's constructive discharge theory and his reliance on the performance evaluation manual, the other indicia of entitlement presented sufficiently establishes, for purposes of surviving summary judgment, that Kamenesh maintains the property interest he asserts. The court emphasizes that it is not making a final ruling as a matter of law on the issue. Kamenesh has not moved for such a ruling, and in any event, rulings of this sort which involve questions of fact underlying conclusions of law are often best left for resolution at trial. *See, e.g., Lassiter v. Covington,* 861 F.2d 680, 684 (11th Cir.1988).

### 2. *Denial of Promotion*

█ Kamenesh also contends in his complaint and memoranda that the arbitrary and ill-intentioned acts of the Defendants have deprived him of promotions in the department which he would otherwise have received. Neither of the parties has addressed head on whether Plaintiff has a property interest in "deserved promotion." It suffices to say that the record is too unclear at this point for the court to dismiss Plaintiff's claim. *See id.*

At the very least, Plaintiff has the right not to be denied promotion based on the exercise of his rights under the Police Officer's Bill of Rights. Florida Statutes § 112.532(5).

---

7. In fact, Plaintiff admits his primary reason for remaining with the Miami Police Department has been in order to maintain those very same benefits. Affidavit of Peter Kamenesh at 1–2.

8. The parties have exchanged heated salvos over the issue of whether a determination of con-

structive discharge is a question of fact or a mixed question of fact and law. The court's ruling renders their efforts extraneous. As a matter of law, a claim of constructive discharge is unavailable to Plaintiff, whatever its legal nature.

Some indicia of a property interest in deserved promotion may also be derived from the Department's appointment procedures. Promotion above Kamenesh's current position of captain is by appointment either by the police chief alone (Inspector), or by the police chief with the approval of the city manager (Majors and Lieutenant Colonels/Assistant Chiefs of Police). Manual of Rules and Regulations at 2–2. While it appears that the appointments are largely within the police chief's discretion, some limits do exist, though the extent of them is unclear. For example, the chief cannot appoint outside individuals to these positions, but must choose candidates from regular members of the Department. In the case of assistant chiefs of police, candidates for appointment cannot hold a rank below captain; candidates for major cannot hold a rank below lieutenant. *Id.* These restrictions severely limit the pool of candidates available for promotion.

Additionally, Plaintiff alleges in his complaint that he has been shut out from even interviewing for positions of advancement. The record is unclear as to whether such interviews are given as a matter of course or whether they themselves are by discretion. If, for instance, opportunities to interview for promotions are automatically provided on request, yet Plaintiff has been systematically excluded from such opportunities, his right of access to promotion might well be implicated.[9]

In sum, the record remains unclear as to the degree of absolute discretion and the degree of entitlement involved in the appointment of officers above captain in the Miami Police Department. Though it appears that no property interest lies in continued employment in appointments above the rank of captain, it is quite a different matter as to whether any property interest exists in receiving such appointments when deserved, or at least, in being considered for them. Sufficient factual and legal questions remain to preclude summary judgment for Defendants on the point.

The court would emphasize here, though, that even if Kamenesh can establish a property right to deserved promotion, he may have a difficult time proving deprivation of that right. Because at least some significant amount of discretion is involved in administering the promotions he seeks, Plaintiff shall have the heavy burden at trial of establishing that no legitimate, rational reason prevented his obtaining an otherwise deserved promotion—that it was only by arbitrary and improper motive that the Defendants violated the rules and mutual understandings giving rise to Plaintiff's expectation that he, as the most qualified candidate, would receive promotion.

### B. Due Process Deprivation of Liberty

 Defendants have also moved for summary judgment on Kamenesh's claim that he has been deprived of a liberty interest as a result of the publication of three allegedly defamatory performance evaluations and the premature leaking to the press of inflammatory charges which were later dismissed. *See* Plaintiff's Exhibit D; Deposition of Raul Martinez at 31. "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him" a protectable liberty interest may be implicated. *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Damage to one's reputation alone is not enough to trigger due process protections. The individual must not only be stigmatized, but stigmatized in connection with the denial of a right or status "theretofore recognized under [state law]." *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

Plaintiff satisfies the "stigma-plus" test established by the Supreme Court in *Paul v. Davis* for purposes of surviving Defendant's summary judgment motion. The defamation for which Kamenesh seeks

---

**9.** Plaintiff also alleges that his access to promotion has been curtailed as a result of transfers to positions of "lesser quality and appropriateness" which ultimately render him less promotable. If such transfers do not amount to constructive demotions but are merely reassignments, it may be that no property interest is implicated thereby. *Maples v. Martin,* 858 F.2d at 1550.

remedy has occurred, if at all, in connection with state action that has allegedly deprived Kamenesh of both his right to continued employment without discretionary demotion and his right to deserved promotion.[10]

Because the cases on which they rely happen to concern instances of discharge, Defendants make the mistake of arguing that only stigmatization which occurs in connection with a discharge can implicate Plaintiff's liberty interest under the Fourteenth Amendment. This is simply not the case. *Paul v. Davis* makes clear that due process liberty protections are triggered whenever "a right or status previously recognized by state law was *distinctly altered* or extinguished." 424 U.S. at 711, 96 S.Ct. at 1165 (emphasis added). It is not necessary, then, that the right be completely extinguished, as in the case of a discharge, but merely that it be "distinctly altered." Assuming Kamenesh can establish a property interest in either avoiding discretionary demotion or obtaining deserved promotion, his deprivation of either interest would sufficiently "alter" if not extinguish those rights so as to activate due process protections. *See, e.g., Goss v. Lopez*, 419 U.S. 565, 574–76, 95 S.Ct. 729, 736–37, 42 L.Ed.2d 725 (1975) (temporary suspension from school sufficient to trigger due process liberty interest).[11]

Defendants' reliance on *Moore v. Otero*, 557 F.2d 435 (5th Cir.1977), in support of their assertion that no liberty interest is implicated by demotion, proves unpersuasive. In that case, a police officer was transferred from the position of corporal, with quasi-supervisory powers, to that of patrolman, with no supervisory powers, amidst potentially stigmatizing charges that he had failed to respond to another officer's call for aid. The court affirmed summary judgment against the officer, observing that even if "the report and the assignment stigmatized [plaintiff], his retention of employment negates his claim that he was denied a 'liberty'." *Id.* at 438. Yet as the same court later observed in *DeKalb*, the patrolman in *Moore* possessed no property right in his assignment as corporal. The Tampa City Code explicitly stated that corporals served at the pleasure of the police chief and mayor. *DeKalb*, 648 F.2d at 414. *See Moore*, 557 F.2d at 436 n. 2. Moreover, even the court in *Moore* observed that a significant demotion—rather than discharge alone—"might present the type of loss of tangible interest connected with stigmatizing state action that, under *Paul*, could give rise to a liberty interest." *Id.* at 438 n. 11.[12]

**C. Deprivation of First Amendment and Equal Protection Rights**

Defendants' motion does not seek summary judgment on Plaintiff's claims of de-

---

**10.** There is no requirement that the defamatory statements "in point of fact 'cause'" the denial of the established right or status at issue. It is sufficient that the statements "occurred in the course" of the denial of plaintiff's other tangible interest. *Owens v. City of Independence*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980) (citing *Paul v. Davis*, 424 U.S. at 710, 96 S.Ct. at 1164).

**11.** Defendants make the same mistake in attempting to rebut Plaintiff's use of *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037 (11th Cir.1989), for the proposition that a defamatory performance evaluation is "published" upon being placed in a police officer's personnel file and thereby made a public record by operation of state law. The *Buxton* court's application of this principle to a stigmatizing statement "attending a government employee's discharge," *id.* at 1042, in no way precludes its application to statements attending the dissipation of narrow-

er rights, such as those asserted by Kamenesh. The Eleventh Circuit in *Buxton* indicated no desire to overturn the prior holdings in *DeKalb* and *Hatcher* that property interests can arise within the employment context as well as constituting the employment itself. By implication, deprivation of such narrower but well-established property interests, together with stigmatizing statements, per se alters an employee's status or rights and implicates the employee's liberty interest. *See Paul v. Davis*, 424 U.S. at 711, 96 S.Ct. at 1165.

**12.** The Defendants maintain that Kamenesh received adequate procedural due process by being able to rebut the negative performance evaluations and disciplinary recommendations before the civil service board. Even if true, substantive due process claims remain to the extent the stigmatizing statements were published by arbitrary and improper motive and still remain, unexpunged, in Plaintiff's personnel file.

nial of equal protection or impingement of his First Amendment rights to free speech and association. Accordingly, those claims are not at issue before the court.

### D. Defendants' Assertion of Qualified Immunity

█ Defendants, in their individual capacities, contend that their actions are entitled to qualified immunity from Kamenesh's constitutional tort claims.[13] "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). If Plaintiff proves his allegations that he was defamed and demoted and kept from promotion, all without cause, it is likely that no qualified immunity will attach to the Defendants' conduct. A reasonable police officer would know, at a minimum, that such conduct violated clearly established statutory rights prohibiting adverse treatment of public employees without cause. As discussed above, both the Police Officer's Bill of Rights and § 447.209, which statute in turn conditions the Department's conduct on compliance with the parties' Collective Bargaining Agreement, require that any discipline or discharge of an employee issue only for "proper cause" and be supported by legitimate reasons. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity defense does not protect "those who knowingly violate the law").

Again, the court emphasizes that the holding here is a provisional one, finding only that Plaintiff's evidence is sufficient to support his case when all factual inferences are resolved in his favor. Though the parties have adequately presented the law of qualified immunity, they have devoted little, if any, effort toward applying the law to the specific facts and circumstances of this case. Numerous factual issues of responsibility and causation appear to remain. Upon resolving the factual disputes underlying the legal conclusion of qualified immunity at trial, the court may well yet find that some or all Defendants possess such immunity in their individual capacities. *See Lassiter,* 861 F.2d at 684.

### E. Defendants' Assertion of Lack of Municipal Liability

█ Defendant City of Miami and the individual Defendants in their official capacities argue for dismissal of Plaintiff's claims against them on the grounds that there is no evidence that a municipal policy, custom, or practice was the moving force behind any constitutional injury sustained by Kamenesh. While reserving final ruling for trial, it appears from the record that—at the very least—the decisions of the two police chiefs involved and the direct and indirect ratification of those decisions by two different city managers concerning the incidents complained of constitute acts by "final policymakers" as established by *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny. Accordingly, summary judgment for Defendants on the lack of municipal liability would be inappropriate.

### Count II: Violation of the Police Officer's Bill of Rights

█ Plaintiff claims in Count II that Defendants have violated his rights as a police officer as set forth in Florida Statutes § 112.532. Because questions of fact remain concerning the adequacy of notice of allegedly punitive actions against Kamenesh and whether the Defendants fulfilled the statute's procedural requirements when conducting investigations of Plaintiff, Count II must survive Defendants' summary judgment motion.

---

**13.** Because the Defendants have asserted their qualified immunity defenses as a single argument, equally applicable to all Defendants, rather than as a defense separate and unique to each individual officer, the court has limited its discussion of qualified immunity to those general parameters.

In addition to asserting noncompliance with the statute's provision of procedural rights, Plaintiff also alleges that he has suffered retaliatory action from the Defendants in the form of transfers, reassignments, constructive demotions, and denials of promotion as a consequence of his filing this lawsuit and exercising other such rights under the statute. *See* Florida Statutes § 112.532(3). Retaliatory action is expressly prohibited by the statute. Florida Statutes § 112.532(5). Though Defendants have not contended that an absence of factual dispute exists as to the procedural aspects of Plaintiff's § 112.532 claim, they do assert that no evidence exists as to the retaliatory aspects of his claim. The court finds Plaintiff has sufficiently demonstrated the existence of disputed facts on the issue of retaliation in violation of § 112.-532(5). *See, e.g.,* Deposition of Clarence Dickson at 209–10. *See Sylvester v. City of Delray Beach,* 431 So.2d 738 (Fla. 4th Dist.Ct.App.1983), *appeal after remand,* 486 So.2d 607 (1986).

■ Defendants, alternatively, move for partial summary judgment on the issue of the scope of the remedies available for violations of § 112.532. Defendants contend that injunctive relief represents the sole available remedy against Defendants for a violation of the statute, citing in support *City of Miami v. Cosgrove,* 516 So.2d 1125 (Fla.3rd Dist.Ct.App.1987). Plaintiff counters that *Cosgrove's* limitation of remedies applies only to suits against municipal entities and does not prevent awards of money damages under the statute when violations are asserted against municipal officials in their individual capacities. Plaintiff argues that § 112.532(3) gives him the express right to sue all entities, other than his employer, for damages under the statute.[14]

The court finds that the holding in *Cosgrove* was intended to quash all suits for damages under § 112.532. Contrary to Plaintiff's contention, *Cosgrove* did concern a nullification of the trial court's award of damages against both the municipality and a defendant in his individual capacity.[15] Moreover, the reasoning in *Cosgrove* is persuasive of its own right. Florida Statutes § 112.534 expressly sets forth the remedies available for violations of § 112.532. The sole remedy provided for in § 112.534 is injunctive relief.[16] As the court in *Cosgrove* observed, "where one thing is expressed and others are not, the Legislature is presumed to have intended to omit the items not expressed." *Cosgrove,* 516 So.2d at 1127. Kamenesh misreads § 112.532(3) in arguing that it creates a private right of action for damages against individual offenders. There is no express language in the provision which creates any such right. As *Cosgrove* explained, that provision "simply memorializes" the right of an officer to sue other persons for damages suffered by the officer in the performance of official duties. *Cosgrove,* 516 So.2d at 1129. Such suits for damages must be based on causes of action, such as the § 1983 claims asserted in Count I, which exist independent of the statute.

### Count III: Fraud

■ In Count III of his complaint, Kamenesh claims that former Police Chief

---

**14.** Section 112.532(3) reads:

> **(3) Civil Suits brought by law enforcement officers or correctional officers.**—Every law enforcement officer or correctional officer shall have the right to bring civil suit against any person, group of persons, or organization or corporation, or the head of such organization or corporation, for damages, either pecuniary or otherwise, suffered during the performance of the officer's official duties or for abridgment of the officer's civil rights arising out of the officer's performance of official duties.

**15.** Defendants have submitted the trial court's Final Judgment and the relevant portions of the appellate record in *Cosgrove* as part of their Reply.

**16.** Section 112.534 reads:

> **Failure to Comply**
> If any agency employing law enforcement officers or correctional officers fails to comply with the requirements of this part, a law enforcement officer or correctional officer employed by such agency who is personally injured by such failure to comply may apply directly to the circuit court of the county wherein such employing agency is headquartered and permanently resides for an injunction to restrain and enjoin such violation of the provisions of this part and to compel the performance of the duties imposed by this part.

Dickson and the City are liable to him in fraud. Kamenesh bases his claim on Dickson's promise that if Plaintiff accepted the assignment to work in the Special Investigation Section as Deputy Commander under Colonel Oboz, Dickson would eventually remove Oboz and promote Kamenesh to head the Section. Because Plaintiff's claim rests solely on a promise of future action, he has not stated an actionable claim for fraud and summary judgment must be granted for the Defendants Dickson and City of Miami as to Count III.

■ As Defendants have aptly noted, it is settled law that "a promise of future action or a prediction of future events cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made." *Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 883 (11th Cir.1983); *Plantation Key Dev. v. Colonial Mortgage Co. of Indiana, Inc.*, 589 F.2d 164, 172 (5th Cir.1979) ("a mere broken promise does not constitute fraud"); *Sleight v. Sun and Surf Realty, Inc.*, 410 So.2d 998, 999 (Fla.3rd Dist.Ct.App.1982).

Plaintiff argues that his claim fits into an exception to the general rule, in that it was a promise of future action made with no intention of actual performance. Florida law does allow for such an exception. *First Interstate Development v. Ablanedo*, 476 So.2d 692 (Fla.5th Dist.Ct.App. 1985), *remanded on other grounds*, 511 So.2d 536 (Fla.1987). This is not, however, Plaintiff's case. The entire thrust of the allegations laid out in the complaint and supported by the evidence is that Dickson, as new police chief, did in fact originally intend to force Oboz out and replace him with Kamenesh. Only later, when Dickson's political muscle proved inadequate to the task, did he recede from the promise and ask Kamenesh to suffer the consequences "for the good of the Department." Complaint at para. 15; *see generally id.* at para.'s 8–15. There is simply nothing in the complaint or the record to support Plaintiff's newly asserted theory that, from the outset, Dickson never intended to make good on his promise.

Plaintiff attempts to save his fraud claim by relying on cases involving negligent misrepresentation and constructive fraud theories. These cases prove irrelevant here. Plaintiff has pled a claim of actual or intentional fraud and has produced no evidence to support it. Because Plaintiff's claim fails against Dickson individually and in his official capacity, so too does his vicarious claim against the City.

Count IV: Libel and Slander

■ In Count IV of his complaint, Kamenesh alleges that the Defendants defamed him by 1) issuing personnel memoranda and performance evaluations containing false statements harmful to his reputation, and 2) leaking harmful misleading information to the news media concerning the Internal Security investigation of Plaintiff.

Because statements in the personnel memoranda and performance evaluations were made within the scope of the Defendants' official duties, the Defendants are absolutely immune from state law claims arising from the statements' publication. *City of Miami v. Wardlow*, 403 So.2d 414 (Fla.1981). It matters not that the statements may have been made maliciously or with reckless disregard of their falsehood. *McNayr v. Kelly*, 184 So.2d 428, 430 (Fla. 1966). Plaintiff contends that at least some portions of a July 1985 performance evaluation were not within the scope of Defendant Putnam's duties as they commented on matters occurring in May 1985. Putnam's references to May events in the July evaluation, however, occur solely by way of discussing findings of the Internal Security investigation. Because those findings were only issued in July 1985, the court finds Putnam's commentary appropriate and within the scope of his duties.

As to the leaking of allegedly harmful and misleading statements to the media prior to completion of the Internal Security investigation, no immunity lies. Information concerning an ongoing investigation of a law enforcement officer, by legislative mandate, is to remain confidential. Florida Statutes § 112.533(2)(a). The individual who provided the press with information

regarding the investigation of Kamenesh did so beyond the parameters of his official duties. Material questions of fact remain as to whether one of the Defendants was responsible for leaking information to the public and whether such information was actually defamatory.[17]

### Count VI: Intentional Infliction of Emotional Distress

■ Plaintiff claims in Count VI that the Defendants, by their "vicious," "intentional, malicious, offensive and shocking" acts, subjected him to severe emotional distress. Complaint at para. 95. As numerous material issues of fact remain concerning Plaintiff's claim, summary judgment would be inappropriate at this juncture. Defendants' assertion that their conduct fell within their management rights and, therefore, was privileged is itself a question of fact for the jury.

■ Because Plaintiff claims the individual Defendants acted with such malicious and purposeful disregard of his rights, no claim for intentional infliction of emotional distress against the Defendant City can lie. Under Florida Statutes § 768.28, Florida's statutory waiver of sovereign immunity, the state and its subdivisions maintain their immunity where the acts of its employees were committed with "malicious purpose or in a manner exhibiting wanton and willful disregard" of another's rights. § 768.28(9)(a). Accordingly, summary judgment will be granted for the Defendant City of Miami as to Count VI.

### Count VII: Negligence[18]

In Count VII, Kamenesh alleges that he has suffered cognizable harm as a result of the City's negligently performing its penumbra of responsibilities for running the Police Department: hiring, training, and supervising employees and creating and enforcing regulations related to the provision of police services.[19] Kamenesh claims, essentially, that the City's negligence in carrying out its administrative responsibilities resulted in the various harms inflicted by his supervisors as alleged in his other claims. Those harms include: 1) adverse job assignments; 2) the denial of procedural rights; 3) harms to his liberty interest; and 4) the infliction of emotional distress.[20]

■ As to the first two harms alleged, absent a situation involving discharge, Plaintiff has presented no common law au-

---

**17.** Because the only actionable defamation remaining for Plaintiff arises from conduct occurring outside the scope of a state employee's official duties, the City is relieved of liability by operation of Florida Statutes § 768.28(9)(a) and shall be dismissed from Count IV. *See* discussion of § 768.28(9)(a), *infra. See also Bauer v. Gulfport,* 195 So.2d 571 (Fla. 2nd Dist.Ct.App. 1967), *cert. denied,* 201 So.2d 556 (Fla.1967) (city cannot be liable for defamatory statements by its employees where statements were made outside of scope of employee's official duties); *Saxon v. Knowles,* 185 So.2d 194 (Fla. 4th Dist. Ct.App.1966) (same).

**18.** Because the City has not asserted the privilege of sovereign immunity in its motion, but rather, has argued the negligence claim on its merits, the court has assumed that no governmental immunity attaches to the conduct complained of by Kamenesh under Count VII.

**19.** Kamenesh's complaint avers that the City breached its "duty to properly hire its employees, train those employees, supervise those employees and establish policies and employment practices regarding the employment milieu that will assure the protection and enjoyment of employees' basic rights of citizenship and of uninterrupted public employment under fair and legal conditions." Complaint at para. 98. Alternatively, Plaintiff states his claim by alleging the City "negligent[ly] [failed] to establish and follow and maintain proper and lawful procedures in the security and maintenance of employment practices ... [failed] to train and monitor its employees in those procedures and standards, and ... negligent[ly] supervis[ed] ... its employees." *Id.* at para. 100.

**20.** Plaintiff, of course, cannot obtain recovery under a theory of supervisory negligence where the underlying harms alleged are statutory in nature and provide Kamenesh with no right to seek damages, *see supra* as to Count II (§ 112.-532), or are not actionable here, *see supra* as to Count III (fraud) and the greater portion of Count IV (libel and slander).

As to the actionable portion of Plaintiff's defamation claim under Count IV, Plaintiff has failed to show under Count VII that any City official, acting within the scope of his duties, could somehow have prevented the improper leaking of information concerning the investigation of Kamenesh to the press. *See Friedman v. Mutual Broadcasting System,* 380 So.2d 1313 (Fla. 3rd Dist.Ct.App.1980).

thority which requires employers to exercise due care in preventing supervisors from making improper personnel decisions that adversely affect a subordinate's job assignment or deprive the employee of procedural rights. The reason for the absence of authority may well be that no harm traditionally cognizable at common law in tort results from such alterations of an employee's day-to-day tasks or from the denial of procedural rights. The cases under Florida law recognizing a cause of action against employers for negligent hiring and negligent supervision concern instances where the plaintiff—whether as fellow employee or member of the general public—suffers physical injury or tangible property loss as a result of the tortious conduct of the employer's hireling. *See, e.g., Mallory v. O'Neil*, 69 So.2d 313 (Fla. 1954) (negligent hiring); *Jenkins v. Milliken*, 498 So.2d 495 (Fla.2nd Dist.Ct.App. 1986) (same); *Walsingham v. Browning*, 525 So.2d 996 (Fla.1st Dist.Ct.App.1988) (negligent supervision); *Doe v. Ft. Lauderdale Med. Ctr. Mgt.*, 522 So.2d 80 (Fla. 4th Dist.Ct.App.1988) (same); *Great Atlantic & Pacific Tea Co. v. Jones*, 294 F.2d 495 (5th Cir.1961) (employer's duty to provide competent fellow employees and safe work environment); *McGee v. C. Ed. DeBrauwere & Co.*, 117 Fla. 859, 162 So. 510 (1935) (same).

The harm to his employment, his reputation, and his procedural rights which Kamenesh alleges to have resulted from the City's supervisory negligence is merely a restatement of the harm he claims to have suffered under his § 1983 claims: constructive demotion, denial of deserved promotion, deprivation of his liberty interest,[21] and denial of procedural protections. It may well be that Plaintiff has suffered harm to his employment and his reputation such that he can establish deprivations of property, liberty, and procedural interests.

Protection from the deprivation of these interests, however, devolve from constitutional, not common law, rights. The Supreme Court has made it manifestly clear that to establish a deprivation of such rights, whether directly, or indirectly by supervisory neglect, a plaintiff must claim more than mere negligence on the part of the employer. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). *See, e.g., Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (to establish "failure to train" claim under due process clause, plaintiff must show "deliberate indifference" by municipality); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988) (denial of due process procedural rights established only upon a showing that defendant "knew or should have known" of plaintiff's deprivation). Kamenesh cannot obtain recovery for a constitutional deprivation merely by brandishing the common law talisman of negligence.

A different result arises with respect to Plaintiff's claim that negligent supervision also caused him to suffer intentionally inflicted emotional harm. Severe emotional harm is the type of physical injury actionable under a common law tort theory. Because factual issues remain as to whether any of the City's supervisory officials failed to exercise due care in preventing Plaintiff from suffering intentionally inflicted emotional harm,[22] summary judgment on Count VII must be denied to this limited extent.

### ORDER

For the foregoing reasons, it is hereby

ORDERED and ADJUDGED that the motion for summary judgment of the Defendant City of Miami and the Defendants Dickson, Oboz, Bared, Putnam and Anderson in their official and individual capacities as to Plaintiff's § 1983 claims of

---

**21.** For the reasons stated above, *see* note 20, *supra*, Plaintiff has no claim of negligent supervision against the City for any acts of libel or slander committed by the individual Defendants. Kamenesh's only claim for negligent supervision arising from harm to reputation concerns the deprivation of his liberty interest.

**22.** In an action for supervisory negligence, it matters not whether the underlying tort was committed willfully, maliciously, or negligently. *Mallory*, 69 So.2d at 315.

deprivation of protected property and liberty interests is DENIED. It is further

ORDERED and ADJUDGED that the Defendants' motion for summary judgment as to Count II is DENIED, except to the extent that Florida Statutes § 112.532 shall be deemed to provide Plaintiff the remedy of injunctive relief only. It is further

ORDERED and ADJUDGED that the Defendants' motion for summary judgment as to Count III is GRANTED. It is further

ORDERED and ADJUDGED that the Defendants' motion for summary judgment as to Count IV is GRANTED in its entirety for the Defendant City of Miami and the named Defendants in their official capacities and GRANTED as to the named Defendants in their individual capacities as regards allegedly defamatory personnel memoranda and performance evaluations but DENIED as to the Defendants in their individual capacities as regards improperly leaked information of an ongoing Internal Security investigation. It is further

ORDERED and ADJUDGED that the Defendants' motion for summary judgment as to Count VI is GRANTED as to the Defendant City of Miami and the named Defendants in their official capacities, but DENIED as to the named Defendants in their individual capacities. It is further

ORDERED and ADJUDGED that the Defendant City of Miami's motion for summary judgment as to Count VII is GRANTED as to all of Plaintiff's claims of supervisory negligence except as concerns his claim of negligent supervision by the City such as to allow the intentional infliction of emotional harm, for which claim the Defendant's motion is DENIED.

DONE and ORDERED.