659 So.2d 295 (1994)
Gregg F. BAILEY and Lizzie Shirley Bailey, Appellants,
v.
BOARD OF COUNTY COMMISSIONERS, et al., Appellees.
No. 92-3882.
District Court of Appeal of Florida, First District.
December 20, 1994.
*296 Robert C. Widman, Nelson, Hesse, Cyril, Smith, Widman, Herb, Causey & Dooley, *297 Sarasota, Joseph W. Little, Gainesville, for appellants.
Peter J. Hurtgen and Camilla M. Cochrane, Morgan, Lewis & Bockius, Miami for appellees Alachua County, James Strauss, Gary Brown, Nate Caldwell, Stephen Garrahan and Colleen Hayes.
Ronald A. Labasky and Jennifer Parker LaVia, Parker, Skelding, Labasky & Corry, Tallahassee, for appellees L.J. Hindery and Farnell Cole.
H. Jack Klingensmith and David M. DeMaio, Jorden, Burt, Berenson, Klingensmith & Suarez, Miami for appellee City of Gainesville.
Toby S. Monaco, Monaco & Monaco, P.A., Gainesville, for appellee Tom L. Allison.
SMITH, Senior Judge.
The Baileys appeal a final judgment dismissing their multi-count complaint against appellees, the defendants in their action for damages arising out of the alleged false arrest of Gregg Bailey, his subsequent malicious prosecution, and the violation of his civil rights guaranteed to him by the Florida Constitution and state law. We affirm the dismissal of all claims as to all appellees except Alachua County. We affirm the dismissal with prejudice of all claims against Alachua County except for a cause of action for negligence based on the county's liability for the actions of appellee Strauss.

I.

BAILEY'S ARREST AND PROSECUTION.
In April 1987, several inmates using hacksaw blades attempted to escape from the Alachua County Detention Center (ACDC).[1] In the subsequent investigation of the escape attempt, inmate Charles Jerkins implicated ACDC personnel in the attempt. After consulting with Tom Allison, the Assistant Director of ACDC, Lieutenant Gary Brown, the officer investigating the incident, asked the Alachua County State Attorney's Office to investigate any potential wrongdoing by ACDC employees.
The state attorney assigned Special Investigator John Tileston to investigate Jerkins' allegations. Tileston was familiar with Jerkins, and knew him to be a reliable source of information in law enforcement circles. Jerkins implicated appellant Greg F. Bailey, a guard at ACDC, in the escape attempt, and told Tileston he had offered Bailey a bribe to obtain hacksaw blades.
Tileston devised an undercover plan in which Jerkins would offer Bailey a bribe while being monitored. Tileston obtained the $500 bait money and a body bug from the combined Gainesville/Alachua County Narcotics and Organized Crime Unit (NOCU). Farnell Cole, an Alachua County deputy sheriff attached to NOCU, was assigned to provide Tileston assistance with a body bug. His responsibility was to monitor the listening equipment.
On May 14, 1987, Lieutenant James Strauss "wired" Jerkins and provided him with the $500 bait money. Jerkins was instructed to engage Bailey in conversation and offer him the bribe. Reception on the body bug was poor, but Cole reported hearing Jerkins mention "$500," and the words "hacksaw blades" were transmitted through Jerkins' body bug. At some point the officers ascertained that the money had passed from Jerkins to Bailey. Tileston, accompanied by Cole, stopped Bailey and asked him to accompany them to Allison's office to answer questions. In Allison's office, Tileston informed Bailey that he was under arrest, and Cole read him his Miranda rights. The same morning of his arrest, Bailey was given a letter written by Allison suspending him without pay. Bailey spent a few days in jail and was released.
Bailey did not initially offer any significant exculpatory explanation to the officers. Much later, Bailey's version of the events that transpired became clear. Bailey explained that he had told ACDC Chief of Security, Stephen Garrahan, and Lieutenant *298 Strauss about inmate contacts. He said that he told Strauss that he had been approached by an inmate (Jerkins) as Strauss was leaving ACDC and Bailey was arriving the evening prior to Bailey's arrest. Bailey said that he told Phillips, the corrections officer on duty with Bailey the night of his arrest, generally about prior inmate contacts and his communications with Strauss and Garrahan. However, Strauss told no one of Bailey's comment during this shift change the evening prior to Bailey's arrest. None of Bailey's prior discussions with these men was reported to Tileston.
Bailey explained that he took the money from Jerkins because he knew that he was supposed to confiscate contraband in the jail. According to him, he tried twice, to no avail, to reach a supervisor. He went on about his duties, planning to notify a supervisor once he had finished overseeing inmate feeding. He was arrested while attending to this duty.
The state attorney's office subsequently entered a nolle prosequi as to all criminal charges filed against Bailey. Nevertheless, Bailey remained in a suspended status without pay. He was never given a hearing, either before or after his suspension. After the charges were dropped, he requested reinstatement, or a hearing if reinstatement was denied, from Nate Caldwell, Alachua County's Director of Corrections. Caldwell directed Bailey's letter to Allison, who denied the request in a letter dated December 7, 1987, pending completion of an investigation by the Florida Department of Law Enforcement (FDLE).[2] Also involved was Colleen Hayes, Alachua County's personnel director. Allison testified that she was consulted regarding the action to be taken with regard to Bailey.
Eventually, FDLE informed Caldwell that there was no basis for further action against Bailey. Caldwell instructed Edward A. Royal, who replaced Allison when he left ACDC on February 13, 1988, to order Bailey back to work. By letter dated June 15, 1988, Royal informed Bailey that he would receive back pay and ordered him to report to work on June 20, 1988. However, during the interim between his arrest and this letter, Bailey had suffered a breakdown, and according to his treating physician, he was unable to return to work.
Bailey reported to work on June 20th, requested his back pay, and asked that he be placed on sick leave until his benefits were exhausted, then placed on annual leave. His request was not acted upon, and he was not given his back pay, sick pay or medical benefits.

II.

THE BAILEYS' FEDERAL COURT ACTION.
Thereafter, in October 1988, Bailey filed suit in federal district court. The Baileys' complaint was brought against the following defendants: Alachua County, the City of Gainesville, Stephen Garrahan, James Strauss, Gary Brown, Tom L. Allison, John S. Tileston, Nate Caldwell, Colleen Hayes, Farnell Cole, Charles Jerkins, Spencer Mann, Eugene Whitworth, and L.J. "Lu" Hindery. Hindery was sued in his official capacity as the Sheriff of Alachua County. Spencer Mann was an Alachua County sheriff's deputy and Eugene Whitworth was the assistant state attorney who handled the charges against Bailey. These men and Charles Jerkins were dropped from the Baileys' first amended complaint, which was the one eventually litigated in federal court. The County, City, Sheriff, and the other eight named individuals remained as defendants in the first amended complaint, which sought compensatory, punitive and injunctive relief under 42 U.S.C. § 1983 and state law.
In Count I, all eleven defendants, the County, City, Hindery as sheriff, Tileston, Strauss, Cole, Brown, Garrahan, Caldwell, Hayes and Allison were sued under 42 U.S.C. § 1983 for deprivation of liberty and property without due process of law. In Count II, all eleven defendants were sued under section 1983 for conspiracy to deprive liberty and property interest without due process of *299 law. In Count III, Bailey sued the County, Allison, Caldwell and Hayes under section 1983 for deprivation of property interest without due process of law. Specifically, he alleged that his employment was suspended without pay and without giving him an opportunity for a hearing. Count IV was a pendent state action for false arrest and false imprisonment. Count V was a pendent state action for malicious criminal prosecution. Count VI, a pendent state action, alleged conspiracy to commit torts. Count VII alleged abridgement of civil rights guaranteed by the Florida Constitution and state law. Finally, Count VIII alleged conspiracy to abridge civil rights guaranteed by the Florida Constitution and state law. Counts IV through VII were brought against all eleven defendants. Count VIII, the final pendent state claim, was brought against all of the defendants except Caldwell.[3]
Judge Maurice Paul of the United States District Court, Northern District of Florida presided over the trial of the Baileys' case in federal court. The defendants moved to dismiss, and also sought summary judgment. In July 1990, Judge Paul issued an order disposing of the various motions. As to Hindery, who was sued only in his official capacity as Alachua County Sheriff and who asserted eleventh amendment immunity from suit, the district court denied his motion for summary judgment. With regard to the claim of several defendants for qualified immunity,[4] the court granted some defendants qualified immunity while denying it to others. The court denied the claim of qualified immunity of Garrahan and Strauss, as well as that of Tileston, finding with respect to the latter that the facts were in dispute on whether Tileston reasonably could have believed he had probable cause for the sting and arrest. However, the court noted the lack of allegations that Brown, Allison, Caldwell, Hayes or Cole knew or should have known that Bailey had reported improper contacts by Jerkins. The court also noted the absence of anything in the record indicating that they had reason to question Jerkins' credibility, especially in light of their reasonable assumption that Tileston had checked Jerkins' credibility, and therefore, the court granted their motions for summary judgment based upon qualified immunity regarding the sting and arrest of Bailey. Significantly, the Court of Appeals reached the same conclusion, finding that there was a "lack of communication" among the ACDC personnel, and that Tileston, the leading investigator and arresting officer, "did not know of these prior communications [by Bailey] until months after the arrest." Bailey, 956 F.2d at 1120-21.
With regard to Bailey's initial suspension without pay, which should be distinguished from the continuation of his suspension thereafter without benefit of a hearing, the court granted Brown, Allison, Caldwell, Hayes and Cole qualified immunity, commenting that these men reasonably believed that Bailey's suspension without pay without a pre-deprivation hearing was lawful. However, qualified immunity for Garrahan, Strauss and Tileston was denied on that same issue.
Turning to the continuation of Bailey's suspension without a hearing, the court denied Brown, Allison, Caldwell and Hayes qualified immunity on the post-deprivation hearing issue. However, Cole was granted qualified immunity because as a member of NOCU, he was not in a position to provide post-deprivation relief to Bailey. While Strauss and Garrahan were not granted qualified immunity for publication to the news media of Bailey's arrest, Hayes, Allison, Caldwell, Brown and Cole were granted qualified immunity for any participation in the initial publication to the news media of accusations against Bailey.
*300 Because Cole was entitled to qualified immunity on all federal causes of action, the court dismissed the remaining pendent claims against Cole. However, citing Roper v. Edwards, 815 F.2d 1474, 1477-78 (11th Cir.1987), the court said the dismissal would be without prejudice so that the court could reconsider its order should the statute of limitations have already run on the state claims.
Hindery, the County, and City argued they were entitled to summary judgment because they were not involved in any of the decisions which allegedly violated Bailey's civil rights, and they were not otherwise liable under the theory of respondeat superior since that is not a viable theory of liability under 42 U.S.C. § 1983. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).[5] However, relying on City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), and Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), Bailey argued that he was not alleging liability on the basis of respondeat superior but instead was basing liability against these defendants for acts pursuant to their policies or customs. The court denied summary judgment, determining that the three were liable for the decisions of Basil Roundtree, the commanding officer of NOCU, who had been given the authority to make final policy for Hindery, the County and City regarding NOCU investigations and tactics. In so doing, the court noted as well that Bailey had alleged additional wrongdoing on the County's part for violating his procedural due process rights (failure to provide a hearing, etc.)
Several defendants contended they were entitled to summary judgment because there had been probable cause to arrest Bailey.[6] Finding that material issues remained on the subject, the district court denied summary judgment on this basis. Thus, the defendants County, Hindery, City, Strauss, Garrahan and Tileston remained subject to trial on the issue of probable cause on the arrest-related claims.
Next, the district court rejected the defendants' assertion that they were entitled to summary judgment because Bailey only alleged negligent deprivation of due process. However, the court agreed with the defendants that they were entitled to summary judgment on Lizzie Shirley Bailey's claims for loss of consortium since consortium does not exist as a federal right. Gresham v. Dell, 630 F. Supp. 1135 (N.D.Ga. 1986). Because she had no other federal question claim, her pendent state claims were also dismissed.
The defendants also asserted that they were entitled to sovereign immunity as to the pendent state claims and the district court agreed in part. Because Counts IV through VI alleged conduct that was taken in bad faith with malicious purpose, in a manner exhibiting wanton and willful disregard of Bailey's rights, immunity for the individual defendants named in those counts was denied. However, sovereign immunity was granted on these counts to Hindery, as sheriff, and to the County and City. Because Counts VII and VIII did not allege bad faith conduct, immunity based on section 768.28, Florida Statutes was granted to the defendants sued in their individual capacities. Immunity from liability under these counts was denied for Hindery as sheriff, the County, and the City.
Pertinent to the present appeal, with regard to Bailey's attempt to state a cause of action in Counts VII and VIII based on section 112.532, Florida Statutes, the Police *301 Officers' Bill of Rights, the district court stated:
It provides certain protections to officers under investigation or subject to disciplinary action by their employer. If the officer's employer fails to comply with the Police Officers' Bill of Rights, the officer may apply to the state circuit court for an injunction to restrain and enjoin the violations and to compel performance in keeping with the Officers' Bill of Rights. Fla. Stat. § 112.534.
Defendants correctly point out that section 112.534 is the exclusive remedy for violations of section 112.532. See City of Miami v. Cosgrove, 516 So.2d 1125 (Fla. 3d Dist.Ct.App. 1987). In Cosgrove, the officer sued the City for violations of subsections 112.532(4) and (5), which deal with notice of disciplinary action and retaliation for exercise of rights. The court held that the officer's sole remedy was through section 112.534 and, therefore, ordered that the claims for damages pursuant to section 112.532(3) be dismissed.
Florida Statutes, section 112.532(3) provides:
Every law enforcement officer or correctional officer shall have the right to bring civil suit against any person, group of persons, or organization or corporation, or the head of such organization or corporation, for damages, either pecuniary or otherwise, suffered during the performance of the officer's official duties or for abridgment of the officer's civil rights arising out of the officer's performance of official duties.
The Third District Court of Appeal noted that Cosgrove's claim focused on a violation of section 112.532 alone. Therefore, it did not consider whether other remedies were available under other "conceivable but unpleaded theories." Cosgrove, 516 So.2d at 1127 n. 1; see e.g., Metropolitan Dade County v. Sokolowski, 439 So.2d 932 (Fla. 3d Dist.Ct.App. 1983) (action for damages may be proper for constitutional procedural due process violations).
Bailey's first amended complaint alleges violations of his civil rights guaranteed by the constitution and laws of Florida. Thus, to the extent that Bailey seeks damages for violation of his rights under Florida's constitution, summary judgment is DENIED. To the extent that Bailey seeks damages for violations of Florida Statutes, section 112.532, summary judgment is GRANTED.
Finally, the court dismissed all pendent state claims for attorney's fees, denied defendants' motion to dismiss for failure to allege facts sufficient to state claims for malicious prosecution, false arrest and imprisonment, and conspiracy, and dismissed all claims for punitive damages against the City, Sheriff Hindery and the County.
Thereafter, the cause proceeded and a five-week jury trial was held. At the outset, the district court orally granted summary judgment in favor of Allison on all remaining claims, dismissing him from the litigation, purportedly because Allison had left ACDC. At the close of all the evidence, the court considered the motions for directed verdict by the remaining defendants. The court granted directed verdicts for Tileston, the County, City, Strauss, Garrahan and Hindery as to Bailey's conspiracy and arrest-related claims on the grounds that Tileston, upon the uncontroverted evidence, had probable cause to arrest Bailey. Significant to this appeal, the district court found that the decision to arrest Bailey was made by Tileston, "and him alone." In addition, the district court directed verdicts in favor of all the defendants on all of Bailey's state claims. The court directed verdicts in favor of Tileston, the City, Strauss, Brown, Garrahan and Hindery on Bailey's name-clearing hearing claim. The directed verdicts left three defendants, Caldwell, Hayes and the County, and two claims  procedural due process and name-clearing hearing  for the jury. The jury returned a verdict in favor of Bailey against Caldwell and Hayes, awarding Bailey damages of $2,182,406.00. The County was exonerated from liability.

III.

THE BAILEYS' STATE COURT ACTION.
In the meantime, after Judge Paul's pre-trial order of July 1990, the Baileys filed the *302 instant suit in state court seeking damages for several causes of action under state law. Unlike their complaint in federal court in which it was alleged that both Tileston and Cole arrested Bailey, the Baileys alleged in their state court action that it was Cole, alone, who placed Bailey under arrest for having brought hacksaw blades into the jail to aid the April escape attempt. Their complaint named the same defendants as in the federal court action but added one, Harris A. Tobin, also an employee of the state attorney for the eighth judicial circuit, who allegedly assisted in devising the sting operation to ensnare Bailey.
Eventually, a second amended complaint was filed and by this complaint, Lizzie Shirley Bailey sued all of the defendants for loss of consortium due to her husband's false arrest and false imprisonment. Gregg Bailey sued the City, County, Hindery, Allison, Cole and Tobin for false arrest and false imprisonment.[7] In Count II, Lizzie Shirley Bailey sued Tileston, Strauss, Cole, Brown, Garrahan, Caldwell, Hayes and Allison for loss of consortium due to her husband's malicious criminal prosecution. Bailey sued Allison and Cole for malicious criminal prosecution. In Count III, Lizzie Shirley Bailey sued all of the defendants for loss of consortium due to conspiracy to commit torts. Gregg Bailey sued the City, County, Hindery, Allison, Cole and Tobin for that conspiracy. In Count IV, both Baileys sued the City, County, Hindery, Allison, Cole and Tobin for abridgment of civil rights guaranteed by the constitution and laws of the state of Florida. The liability of the City, County and Hindery was predicated upon the alleged liability of Cole, Allison and Tobin for their wrongful acts. Finally, in Count V, both Baileys sued the City, County, Hindery, Allison, Cole and Tobin for conspiracy to abridge their civil rights guaranteed by the Florida Constitution and laws of the state. In Counts VI and VII, the Baileys sued Tobin for violation of the rights guaranteed them by section 42 U.S.C. § 1983.
In their state suit, as they had done in their federal suit, the Baileys contended that Bailey's arrest, without probable cause and without due process, violated his rights under the Police Officers' Bill of Rights set forth in section 112.532, Florida Statutes.

IV.

THE BAILEYS' FEDERAL COURT APPEAL.
Subsequent to the Baileys' filing of their state court action, the Eleventh Circuit Court of Appeals decided the appeal and cross-appeal from the final judgment entered by Judge Paul. Bailey v. Board of County Commissioners of Alachua County, 956 F.2d 1112 (11th Cir.1992). Bailey had appealed many of the summary judgments and directed verdicts granted the defendants by the federal district court, as well as the jury's verdict exonerating Alachua County from liability. Caldwell and Hayes cross-appealed the jury verdict against them.
The Eleventh Circuit Court of Appeal agreed with the district court that Tileston had probable cause to arrest Bailey and therefore affirmed the district court's final judgments for all defendants with respect to all of Bailey's arrest-related claims. Similarly, the appellate court agreed with the district court that all defendants were entitled to judgment on the claim of conspiracy to abridge civil rights. The appellate court commented that to have a conspiracy, there must be agreement, which presupposes communication, and that all of the defendants in this case suffered from an extreme lack of communication.
Turning to the procedural due process claims against Caldwell, Hayes and Allison, the court concluded that Bailey did not establish that Caldwell, Hayes and Allison reasonably would have known their action in initially suspending him without pay upon his arrest was unlawful, and the court agreed with the district court's ruling that Caldwell, Hayes and Allison were entitled to qualified *303 immunity with respect to Bailey's procedural due process claims regarding his right to a pre-deprivation hearing. The court also agreed with the district court that Bailey had post-deprivation procedural due process claims against Caldwell, Hayes and the County, but the appellate court disagreed with the district court's directed verdict for Allison on this claim, finding instead that the claim of a post-arrest deprivation of procedural due process should have gone to the jury against Allison as well. The court ruled that Allison was not entitled to summary judgment because he had "already gone" as the district court held.
The Eleventh Circuit affirmed the jury's verdict in favor of Alachua County, commenting that no reasonable jury could have found liability on the part of Alachua County for Bailey's procedural due process or name-clearing hearing claims. The court reasoned as follows:
A local government cannot be held liable for its employee's acts under section 1983 on a theory of respondeat superior; the liability must be found on an official policy or custom. An isolated decision by a municipal employee constitutes official policy only if that employee has "final policymaking authority" for the challenged act under state law. In this case, the record is devoid of evidence that either Caldwell, Hayes or Allison had "final policymaking authority" for Alachua County's personnel policy. Testimony at trial was unequivocal that final policymaking authority rested in the Board of County Commissioners. Furthermore, the record is also devoid of evidence that Alachua County had any official policy or custom to deny Bailey any name-clearing hearing to which he may have been entitled. (Citations omitted).
Bailey, 956 F.2d at 1125. In sum, Bailey's appeal was successful only insofar as he was able to convince the Eleventh Circuit that the dismissal of Allison from this litigation through summary judgment on the post-arrest deprivation of procedural due process was erroneous.
As to the cross-appeal of Caldwell and Hayes, the appeals court agreed with them that the district court erred in denying them qualified immunity on the claim regarding a name-clearing hearing. The court ruled they were entitled to qualified immunity as a matter of law on this issue. However, the court agreed with the district court that Caldwell and Hayes were not entitled to qualified immunity for Bailey's post-deprivation procedural due process claims. All had testified at trial that they did not give Bailey notice of his appeals rights. Although the evidence was inconsistent with regard to this claim, the appeals court commented that the jury was entitled to resolve this inconsistency as it saw fit. Accordingly, Caldwell, Hayes and Allison were subject to liability on Bailey's post-deprivation procedural due process claims.
However, the court of appeals ruled that the jury's verdict on these claims must nevertheless be reversed due to certain trial errors. The court agreed with Caldwell and Hayes that the district court abused its discretion by refusing to exclude for cause a juror, who because of her work relationship with Bailey, failed to demonstrate on the record her ability to serve as a fair and impartial juror. Further, the appellate court agreed with Caldwell and Hayes that the district court erred in failing to give their requested instruction, which sought to separate the damages attributable to claims involving false arrest and imprisonment from the damages attributable solely to Bailey's procedural due process claims. The court ruled that the district court's refusal to give Caldwell's and Hayes' instruction, coupled with the failure of the instructions as a whole to specify the damages the jury could properly consider, prejudiced Caldwell and Hayes. The court considered, but did not declare as error, the district court's decision not to sever the procedural due process claims from the other claims. However, the court commented that there was substantial doubt and question raised by this refusal and when this doubt was considered with the other errors, a new trial was necessary on Bailey's post-deprivation procedural due process claim against Caldwell and Hayes, and an initial trial against Allison.
Of particular significance is the fact that the Baileys did not appeal the district court's *304 directed verdicts in favor of all of the defendants on all of the Baileys state claims. The appellate court noted, Bailey, 956 F.2d at 1119, that none of these directed verdicts were at issue in the appeal. Included within the rulings of the district court, not appealed, was the district court's summary judgment for the defendants on Bailey's claim that he was entitled to damages for violations of section 112.532, Florida Statutes.

V.

THE BAILEYS' PRESENT APPEAL.
Thereafter, in the state action, the circuit court entered the order appealed. Regarding Count I of the complaint in state court, all defendants, except Tobin, moved to dismiss. The circuit court found that Bailey's claims of false arrest and false imprisonment were heard, litigated and resolved as part of the § 1983 action before the federal district court. Accordingly, the court reasoned that the false arrest claim was properly resolved in favor of all the defendants still a party to that claim and therefore the Baileys were barred from bringing the same claim in state court.[8] With regard to the Bailey's argument that Cole was not a party to the federal suit at the time the issue was litigated,[9] and that they could therefore bring their cause of action for false arrest against Cole in state court, the trial court ruled that the Baileys were nevertheless estopped to bring this cause of action because Cole's employer, the City, was a party to the federal false arrest claim, and the theory of liability against the City was respondeat superior based on Cole's wrongful act. The court noted: "Where a suit is brought against an employer for the alleged wrong of an employee ... a judgment on the merits for the employer bars an action against the employee." Atlantic Cylinder Corp. v. Hetner, 438 So.2d 922, 923 (Fla. 1st DCA 1983), pet. for rev. denied, 447 So.2d 885 (Fla. 1984).
Turning to Count II, the lower court determined that the claim was barred by res judicata or collateral estoppel since the district court had granted a directed verdict in favor of all defendants on the Baileys' state claim of malicious prosecution. Although the claim of malicious prosecution against Cole was not adjudicated in federal court, because the court had dismissed all of the pendent state claims against Cole, the circuit court nevertheless determined that this count against Cole should be dismissed. The court reasoned, based on the holding in Atlantic Cylinder Corp. v. Hetner, supra, that because the Baileys' theory of recovery against the City was based on Cole's alleged wrongful acts, and the City was absolved of liability in federal court on this claim, the Baileys could not bring a claim against Cole.
Turning to the charges in Count III for conspiracy to commit torts, the lower court noted that the federal court had adjudicated the conspiracy to falsely arrest and maliciously prosecute in favor of all defendants to the instant action except Tobin, and therefore, the Baileys were barred by res judicata from bringing that claim.
Turning to Count IV, the claim against the City, County, Hindery, Allison, Cole and Tobin for damages arising out of abridgment of Bailey's civil rights, the circuit court noted that the federal district court had considered the charge of an alleged violation of the Policemen's Bill of Rights, section 112.532, and dismissed the claim.[10] The circuit court agreed with the district court's interpretation of Cosgrove and therefore all claims based on *305 a violation of section 112.532 were dismissed with prejudice.
Regarding the due process claims, these were adjudicated by the federal court in favor of all defendants except Allison and Tobin. Although the claim against Allison for failure to provide a post-deprivation hearing remained viable in federal court, the claim for failure to provide a pre-deprivation hearing against Allison was adjudicated in his favor. Accordingly, the lower court granted all motions to dismiss Count IV except Allison's. Allison's motion to dismiss Count IV was denied only to the extent that Count IV alleged a violation of due process for failure to provide a post-deprivation hearing.
Finally, with respect to the last claim, Count V, for conspiracy to deprive Bailey of his civil rights, the circuit court noted that the federal court had adjudicated this claim in favor of all the defendants, and since the civil rights contemplated in the Baileys' state complaint appeared to be the same as those considered by the federal court, the lower court dismissed Count V against all defendants except Tobin. Regarding Lizzie Bailey's claims, the court noted that her claims for loss of consortium are derivative of those of Gregg Bailey, and where his claims fail, her derivative claims fail also. Sanchez v. Martin, 416 So.2d 15, 16 (Fla. 3d DCA 1982); Gates v. Foley, 247 So.2d 40, 45 (Fla. 1971).
Thereafter, the court entered an order on motion for correction. The order recites that the lower court granted Cole's motion to dismiss because the Baileys had brought the same claims against the City in federal court and lost. The theory of the City's liability was based on Cole's actions. The circuit court recognized that in its prior order, the court had erroneously recited that Cole was an employee of the City. In actuality, Cole was an agent for the City. Nevertheless, the circuit court found this would not change the result reached because suit against Cole is barred whether he is a City employee or merely acted as the City's agent. Mitchell v. Edge, 598 So.2d 125, 127 (Fla. 2d DCA 1992). The lower court acknowledged that Cole was an employee of Sheriff Hindery of Alachua County.
The corrected order also recites that all claims against Cole's employer, Hindery, were adjudicated by the federal court in Hindery's favor. To the extent those claims were based on Cole's acts, they cannot now be brought against Cole. The trial court concluded that although the prior order erroneously stated Cole was an employee of the City, this was a clerical mistake or oversight which did not affect the judgment, and the order was corrected and clarified accordingly.[11]
The Baileys appealed.[12]
At the outset, we will not address the trial court's determination that because Lizzie Bailey's claims are derivative, where her husband's claims fail hers also fail, since there appears to be no disagreement among the parties on this issue. Instead, we will address Gregg Bailey's claims, beginning with Count I. In Count I, Bailey predicates the liability of the County, City, and Sheriff upon the actions of the named individual employees  Allison, Cole and Tobin,[13] who are alleged to have acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of Bailey's rights, by intentionally causing Bailey to be falsely arrested and imprisoned against his will.
Apparently, Bailey brought this action against Allison based upon his belief that because Allison had exited the litigation through summary judgment prior to trial in federal court, the doctrines of res judicata *306 and collateral estoppel do not apply to bar re-litigation of claims against him. However, as Allison amply pointed out before this court, the Eleventh Circuit, reviewing the action taken by the district court, agreed that Allison should be exonerated on all claims except his alleged denial to Bailey of a post-deprivation hearing, which at the time of oral argument in this cause remained pending in federal court.
Turning to Bailey's action against Cole, it appears that Bailey has misinterpreted the effect of the actions taken by the federal district court. At the outset, we note that Bailey mischaracterizes the effect of the federal district court's ruling by arguing that Cole was dropped as a party from the federal action. This is not correct, according to our interpretation of the proceedings below. Bailey was a party to the federal action and the federal district court adjudicated the federal 1983 claims in favor of Cole. In so ruling, as noted above, the federal district court pointed out that there were no allegations that Cole knew or should have known that Bailey had reported improper contacts by Jerkins, and nothing from the record indicated that he had a reason to question Jerkins' reliability, especially in light of his reasonable assumption that Tileston had checked Jerkins' credibility. The district court ruled that Cole, along with Brown, Allison, Caldwell and Hayes, should have been able to rely on their fellow workers' assessments of probable cause, absent some knowledge of their own sufficient to make them question probable cause. For this reason, Cole and the other defendants just named were granted qualified immunity regarding the sting and arrest of Bailey. In granting Cole qualified immunity, the federal court determined that his actions were objectively reasonable.
Bailey's complaint has added no new allegations of alleged knowledge on Cole's part that the arrest made by Tileston was initiated on anything other than probable cause. To the extent that Bailey attempts to allege that it was Cole, alone, who arrested Bailey, we must reject outright this allegation since it is directly contrary to the specific finding of fact of the federal court that Tileston, alone, arrested Bailey. In this case, the conclusion is inescapable that Bailey's complaint is merely an attempt to re-litigate the same or equivalent arrest issues that were litigated in favor of Cole in federal district court. It is apparent that Bailey's state claim is based upon the same operative facts as the claim in federal court, and therefore collateral estoppel applies. Zeidwig v. Ward, 548 So.2d 209, 214 (Fla. 1989).
We turn next to the order dismissing the City on the false arrest and other counts. In its first order, the lower court mistakenly recited that the theory of liability against the City on the § 1983 claims in federal court was respondeat superior based on Cole's wrongful acts. The Baileys point out, and correctly so, that municipal liability under § 1983 may not be imposed on the theory of respondeat superior. However, we agree with the City that the trial court merely used an unfortunate choice of words. It is clear that the City was granted a directed verdict on the § 1983 arrest-related claims because the federal court determined on the merits that there was probable cause to arrest Bailey and no conspiracy. Because none of the other officers involved in the arrest were agents of the City, the directed verdict necessarily means that the district court adjudicated the issues of whether Cole was part of a conspiracy, arrested Bailey, or lacked probable cause. Therefore, considering the context in which the circuit court's erroneous statement was made  whether Cole could assert collateral estoppel  it is clear that what the court below meant was that the City's § 1983 liability was based on the acts of Cole, not respondeat superior. Indeed, the lower court's corrected order of dismissal does not mention respondeat superior; it says "the theory of City's liability was based on Cole's actions."
Finally, Bailey maintains that there is a recognized exception to the doctrine of res judicata and collateral estoppel which is that they will not be invoked where it will work an injustice. Flesche v. Interstate Warehouse, 411 So.2d 919, 924 (Fla. 1st DCA 1982). Bailey urges that application of the doctrine in this case would be manifestly unfair or unjust to him. However, we agree *307 with appellees that accepting Bailey's argument would completely undermine the goals of the res judicata-collateral estoppel doctrines and the purposes they serve: finality, protection from harassment, conservation of judicial resources, and the elimination of inconsistent judgments. In this case, the party to be estopped (Bailey) had a fair opportunity to contest the factual issues in the earlier federal action. As the City has argued in its brief, the City's liability on the § 1983 arrest-related claims was predicated solely on the actions of Cole in connection with his assignment to NOCU, which was jointly regulated by the City. Therefore, in order to attempt to prove the City's liability on the arrest-related claims, the Baileys must necessarily have litigated the facts surrounding Cole's involvement. The City could only have been liable on the arrest-related § 1983 claims if the district court had found that Farnell Cole lacked probable cause to arrest Bailey, acted maliciously, or conspired to violate Bailey's rights. The City (and the others) were granted a directed verdict on these claims because the district court found as a fact that there was probable cause and no conspiracy. The resolution of these factual issues against Bailey precludes him from attempting to revisit the questions of probable cause, malice, and conspiracy in this action against Cole and the others, and imposition of res judicata or collateral estoppel results in no manifest injustice.
In conclusion, the circuit court correctly granted the motions to dismiss Count I, and for the same reasons, Counts II and III, as to all defendants, insofar as these counts rely upon the claims of false arrest or imprisonment, malicious prosecution, or conspiracy.[14]
Regarding Counts IV and V, Bailey's principal assertion is that he should be permitted to litigate his claim for damages for violations of the Police Officers' Bill of Rights, section 112.532(1) and (3), Florida Statutes. Bailey contends that he fits within the language of this statute since he was a corrections officer, and the statute provides that every corrections officer shall have the right to bring suit against any person for damages, pecuniary or otherwise, suffered during the performance of that officer's official duties or for the abridgement of the officer's civil rights arising out of the officer's performance of official duties. Bailey contends that the plain and unambiguous language of the statute gives him a cause of action for civil damages.
Bailey seriously contends that the decision of Third District Court of Appeal, in City of Miami v. Cosgrove, 516 So.2d 1125 (Fla. 3d DCA 1987) is erroneous, and that this court is not bound to follow this erroneous decision. However, even if this court does not wish to reject the reasoning of the Cosgrove decision, Bailey contends that the decision is distinguishable since that decision involved application of section 112.532(4) and (5) of the Police Officers' Bill of Rights, whereas he is seeking a remedy for violations of section 112.532(1). Bailey urges that the Cosgrove holding should be restricted to mean only that the proper remedy for violations of subsections (4) and (5)  (but not 1)  is an injunction rather than damages.
Appellees respond that the federal district court adjudicated Bailey's claim under section 112.532 against him, an appeal was taken in which the federal district court's order on this point was not challenged, and therefore this issue, whether correctly decided or not, has been adjudicated against Bailey and the doctrine of res judicata applies. We agree. 32 Fla.Jur.2d Judgments and Decrees, § 98. In any event, case law interpreting section 112.532 uniformly holds that this section creates no cause of action for damages. Cosgrove; Kamenesh v. City of Miami, 772 F. Supp. 583 (S.D.Fla. 1991); and see, Mesa v. Rodriguez, 357 So.2d 711 (Fla. 1978). We find no reason to revisit the interpretation given by these cases.
Turning finally to Bailey's possible claims against the County for negligence in connection with his arrest, incarceration, and subsequent misfortunes, we observe initially that our attempt to assess the viability of any such cause of action has been hampered by *308 Bailey's somewhat unusual manner of injecting a negligence issue into this proceeding,[15] and his arguments which concentrate largely upon facts and issues already firmly adjudicated against him in the federal litigation. As we have attempted to show by the foregoing perhaps unduly tedious recitation, Bailey's litigation of his § 1983 claims in the federal court resulted in findings and judgment adverse to him on all facts necessary to support his present state claims against all defendants for false arrest, malicious prosecution, or conspiracy to commit these torts. The circuit court therefore properly dismissed all claims based on these facts on res judicata or collateral estoppel grounds. Nevertheless, we are of the view that in Bailey's allegations with respect to the actions of the County's employee, Strauss, Bailey may have set forth facts sufficient to maintain a cause of action against the County for negligence.[16]
The complaint alleges in detail, which we will only briefly summarize here, Bailey's reports to Strauss, Bailey's supervising officer, concerning contacts by inmate Jerkins with Bailey prior to the sting and arrest. It is alleged that Bailey had reported to Strauss that Jerkins had requested help in an escape attempt; that Strauss told Bailey not to bother with attempting to catch Jerkins in such actions; that at 10:40 P.M. on the evening of May 13, 1987, the night before the alleged bribe attempt for which Bailey was arrested, Bailey reported to Strauss that Jerkins had contacted him and that Jerkins wanted something illegally removed from the prison; that at 10:00 on the same evening, Strauss had placed the body bug on Jerkins and had given him the $500 to be used in the bribe attempt; that Strauss told Bailey that evening that he (Bailey) should obtain physical evidence, and that he (Strauss) would report Bailey's communication regarding Jerkins' contact to the security officers; that Strauss failed to report Bailey's communications to the security officers, and failed to inform any of the officers involved in the planned sting and arrest of Bailey.
Although Strauss, along with Tileston and Garrahan, received a directed verdict on the pendent state claims in the federal suit, and a directed verdict also on the § 1983 claims, it appears that no negligence claims based on the failure of Strauss to inform anyone of Bailey's contacts or to take other steps to halt the impending sting and arrest and their aftermath have been tried in the federal court.[17] As observed by Judge Paul in ruling *309 on the pre-trial motions, the federal complaint alleged wrongful conduct on the part of the individual defendants that went beyond negligence. Both the § 1983 and the pendent state claims were grounded upon intentional bad faith or malicious actions, and mere negligent liability on the part of the County was not placed in issue. See, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (protections of Fourteenth Amendment's Due Process Clause are not triggered by lack of due care by prison officials).
For the foregoing reasons, the final judgment in favor of all appellees except the County is AFFIRMED; and as to the County, the dismissal of the complaint and final judgment is affirmed in all respects except as to a claim for negligence with respect to the conduct of the County's employee, Strauss, and as to that claim, the dismissal shall be without prejudice, and appellants shall be entitled, if they choose, to file an amended complaint on that cause of action.
ERVIN and ALLEN, JJ., concur.
NOTES
[1] Most of the facts recited in this opinion are taken, sometimes verbatim, from the opinion in Bailey v. Board of County Com'rs of Alachua County Fla., 956 F.2d 1112 (11th Cir.1992). ___ U.S. ___, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).
[2] This was Allison's third letter, he had already written the letter of May 14, 1987, and another letter of May 26, 1987 covering the same subject.
[3] In its Bailey opinion, 956 F.2d at 1118, the Eleventh Circuit Court of Appeal put Bailey's claims into five categories: the 1983 procedural due process claim; the 1983 claim for a name-clearing hearing; the 1983 conspiracy claim; the arrest-related claims, and the remaining state claims and Lizzie Shirley Bailey's loss of consortium claims.
[4] In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) the supreme court explained that the qualified immunity defense shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
[5] The district court recited further that under Monell, unless the defendants were personally involved in the actions giving rise to a section 1983 claim, they may not be held liable unless they established some practice or policy which made the actions likely to occur. Monell, 436 U.S. at 691, 98 S.Ct. at 2036.
[6] Officers have probable cause to arrest when "the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir.1985) (quoting United States v. Pantoja-Soto, 739 F.2d 1520, 1523 (11th Cir.1984), cert. denied, 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985).
[7] As previously noted, the City, County, and Hindery had been dismissed from the federal court action on this pendant state claim on the basis of sovereign immunity; this and all other pendant state claims against Cole had been dismissed from federal court; and Allison had exited the litigation before the federal trial.
[8] Under the doctrine of res judicata, a final judgment bars a later suit between the same parties, or parties in privity, based upon the same cause of action. Youngblood v. Taylor, 89 So.2d 503, 505 (Fla. 1956). Collateral estoppel bars relitigation of common facts and questions in a later suit between the same parties, when the causes of action are not identical. Id.
[9] Cole was granted summary judgment on the § 1983 action for unlawful detention and deprivation of liberty regarding the sting and arrest of Bailey. Cole was also deemed to have qualified immunity on the post-deprivation hearing issue on the grounds that he was not in a position to provide post-deprivation relief to Bailey. Accordingly, all federal causes of action were resolved in favor of Cole. The federal court exercised its discretion to dismiss all the remaining pendant claims (which included false arrest and malicious prosecution) against Cole though these claims went on to be tried by the federal district court against the remaining defendants.
[10] In fact, the federal court granted summary judgment.
[11] Appellees argue that by this order the circuit court implicitly recognized that its reliance upon respondeat superior in the earlier order was erroneous, and that the circuit court corrected the rationale of its prior order by reciting that the theory of the City's liability was based on Cole's actions.
[12] The appeal was filed after entry of the order on motion to dismiss and order of correction. As this was an appeal from a non-final order, this court relinquished jurisdiction for entry of a final judgment, which simply incorporated the previously entered non-final order.
[13] This opinion does not address the claims against Tobin, since he did not move to dismiss, and the order appealed does not purport to adjudicate any causes of action against him.
[14] Whether dismissal of the entire complaint with prejudice was proper insofar as the complaint attempts to allege liability against the County for negligence is a matter which we will address in the concluding paragraphs of this opinion.
[15] In an obvious attempt to avoid the strictures of the sovereign immunity statute, section 768.28, Florida Statutes, and at the same time continue to maintain his charges of bad faith and malicious conduct on the part of the individual defendants, Bailey has alleged in his complaint that the County (as well as the City and Hindery) caused Bailey to be falsely arrested and imprisoned without probable cause as a result of wrongful acts of employees and agencies that were "less culpable than in bad faith or with malicious purpose." We assume that this allegation is intended to encompass acts which were purely negligent.
[16] In so deciding we are guided by the observations of this court in Adams v. Knabb Turpentine Co., Inc., 435 So.2d 944 (Fla. 1st DCA 1983), in which we reversed a dismissal of a complaint with prejudice, upon a finding that the complaint made sufficient allegations to warrant the allowance of another opportunity to amend. We caution, however, that we express no opinion as to the merits of an action for negligence against the County. Our ruling on this issue is prompted by the absence of any ruling by the trial court below on any possible negligence claims, while at the same time it appears to us that there was an attempt to set forth such claims in the amended complaint. See, footnote 15, supra.
[17] We think there is a distinction between the claim of negligence against the County under these facts and the claim of false arrest, of which Strauss was relieved by directed verdict in the federal trial. In so ruling, we necessarily reject Bailey's contention that the conduct of Strauss falls within the ambit of cases such as Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699 (Fla. 1944) (all those who, by direct act or by indirect procurement, personally participate in or proximately cause the false imprisonment and unlawful detention are liable therefor), Washington County Kennel Club, Inc. v. Edge, 216 So.2d 512 (Fla. 1st DCA 1969), cert. denied, 225 So.2d 522 (Fla. 1969) and Weissman v. K-Mart Corp., 396 So.2d 1164 (Fla. 3rd DCA 1981), so as to render him liable for false arrest. On this point we observe that the same facts were before Judge Paul, who nevertheless granted a directed verdict to Strauss, while at the same time stating that Strauss could have stopped the sting and arrest by providing information to his fellow officers. While it is true that the County received a directed verdict in the federal trial as to the § 1983 claims grounded on false arrest, this claim did not encompass liability for purely negligent actions of the County's employee or agent, Strauss; nor, for that matter, were negligence claims made against the County, which is the reason why summary judgment was granted to the County under the doctrine of sovereign immunity on the pendent state claims for false arrest and conspiracy.